IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **LYDIA PERRY,** | CASE NO. 3:22 CV 1512 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **OREGON HEALTHCARE, LLC,** | |
| Defendant. | MEMORANDUM OPINION AND ORDER |

## INTRODUCTION

Currently pending before the Court in this employment discrimination case is Plaintiff Lydia Perry's Motion for Default Judgment and Award of Damages Pursuant to Federal Civil Rule 55(b)(2). (Doc. 7). Plaintiff seeks $88,010.88 in compensatory, emotional distress, and punitive damages, and $5,287.09 in attorneys' fees and costs, for a total judgment against Defendant Oregon Healthcare, LLC of $93,297.97. *See id*. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367.

For the reasons discussed below, the Court grants Plaintiff's motion and enters default judgment against Defendant in the amount of $93,297.97.

## BACKGROUND

Factual Background

As alleged in the Complaint, the facts are as follows.

Plaintiff, who is African-American, was employed by Defendant as a State Tested Nursing Assistant, or "STNA". (Doc. 1, at ¶¶ 15-17, 27, 44). She suffers from anxiety,

depression, hypertension, and thyroid problems, but could perform her essential job functions. *Id.* at ¶¶ 28-33, 41-43.

During Plaintiff's employment, she suffered from race discrimination and complained about it to her supervisor on April 13, 2020; Defendant ratified the discrimination and failed to take prompt remedial action. *Id.* at ¶¶ 48-85. Shortly after Plaintiff's discrimination complaint, she was suspended from April 24 to April 30, 2020, due to complaints raised by Caucasian co-workers. *Id.* at ¶¶ 95-106. The complaints were found to be unsubstantiated, but Defendant placed Plaintiff on probation and did not compensate Plaintiff for her time off work. *See id.*

On May 31, 2020, Plaintiff's supervisor asked several STNAs to volunteer to work in the COVID-19 unit. *Id.* at ¶ 122. Plaintiff told her supervisor she did not feel comfortable doing so due to her disabilities, which placed her at high risk. *Id.* at ¶¶ 123-25. Other STNAs also declined to work in the COVID-19 unit. *Id.* at ¶ 127. Defendant fired Plaintiff on June 1, 2022 for declining to work in the COVID-19 unit; it did not terminate the employment of Caucasian, non-disabled, or those who had not made protected complaints who had also declined to work in the unit. *Id.* at ¶¶ 135-40.

Plaintiff asserts her termination was retaliatory and discriminatory based on her race and disability. *Id.* at ¶¶ 155-59. She brought claims for race discrimination in violation of 42 U.S.C. § 2000e, *et seq*. (Count I), race discrimination in violation of Ohio Revised Code § 4112.01, *et seq*. (Count II), disability discrimination in violation of the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq*. (Count III), disability discrimination in violation of Ohio Revised Code § 4112.01, *et seq*. (Count IV), retaliation in violation of 42 U.S.C. § 2000e-3 (Count V), and retaliation in violation of Ohio Revised Code § 4112.02(I) (Count VI). *Id.* at ¶¶ 164-240.

Procedural Background

Plaintiff served Defendant on September 1, 2022. (Doc. 3). After Defendant failed to Answer, Plaintiff moved for an entry of default on October 27, 2022. (Doc. 5). Pursuant to Federal Civil Rule 55(a), the Clerk entered default on October 28, 2022. (Doc. 6).

Plaintiff then filed the currently-pending Motion for Default Judgment and Award of Damages on November 3, 2022. (Doc. 7). Defendant has not filed anything in response.

Damages Evidence

In support of her damages, Plaintiff submits the following:

*Plaintiff's Affidavit (Doc. 7-1)*

In her Affidavit, Plaintiff avers she suffered wage loss of $527.04 as a result of her wrongful suspension in April 2020. (Doc. 7-1, at ¶ 4). She asserts she suffered wage loss of approximately $15,547.68 between June 1 and November 18, 2020, while she was unemployed. *Id.* at ¶ 7. She asserts that due to a pay differential between her employment with Defendant and later-acquired employment, she incurred $5,928 in damages between November 19, 2020 and February 8, 2022. *Id.* at ¶ 10. She further avers she has suffered from emotional distress as a result of Defendants' conduct, including increased anxiety, loss of sleep, restlessness, extreme stress, and lack of trust of future employers. *Id.* at ¶¶ 12-13.

*Counsel's Affidavit (Doc. 7-2), Timesheet (Doc. 7-3), and OSBA Study (Doc. 7-4)*

Plaintiff also submits an affidavit of counsel, counsels' timesheets, and an Ohio State Bar Association Study in support of her request for $5,287.09 in attorneys' fees and litigation costs. *See* Docs. 7-2, 7-3, 7-4.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 55 governs default and default judgment. Default has been entered by the Clerk against Defendant pursuant to Rule 55(a). *See* Docs. 5, 6. Under Rule 55(b)(2), the Court may enter default judgment without a hearing, but may conduct a hearing or make a referral if the Court needs to: (1) conduct an accounting; (2) determine the amount of damages; (3) establish the truth of any allegations by evidence; or (4) investigate any other matter. The decision to grant default judgment is within the Court's discretion. *See AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013) (citing among authority 10A Charles A. Wright et al., *Fed. Prac. & Proc.* § 2685 (3d ed. 1998) ("This element of discretion makes it clear that the party making the request is not entitled to a default judgment as of right, even when defendant is technically in default and that fact has been noted under Rule 55(a).")).

"Where damages are unliquidated a default admits only defendant's liability and the amount of damages must be proved." *Antoine v. Atlas Turner, Inc.* 66 F.3d 105, 110–11 (6th Cir. 1995). "The district court must conduct [ ] an inquiry in order to ascertain the amount of damages with reasonable certainty." *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) (internal citation omitted).

**DISCUSSION**

Plaintiff seeks a default judgment against Defendant on her discrimination and retaliation claims. She requests the Court award: (1) $22,002.72 in compensatory damages; (2) $22,002.72 in emotional distress damages; and (3) $44,005.44 in punitive damages, for a total of $88,010.88. She further seeks attorneys' fees and costs in an amount of $5,287.00. For the reasons discussed below, the Court finds Plaintiff has demonstrated her entitlement to the amount requested.

Liability

"Even if a default has been entered against a party, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Anderson v. Johnson*, 1999 WL 1023753, at *2 (6th Cir.) (citing *Quirindongo Pacheco v. Rolon Morales*, 953 F.2d 15, 16 (1st Cir. 1992)); *see also Harris v. Cooley*, 2019 WL 1573260, at *1 (S.D. Ohio) (in considering a motion for default judgment, all "factual allegations of the complaint, except those related to the amount of damages, will be taken as true").

*Race Discrimination (Counts I & II)*

In Counts One and Two of her Complaint, Plaintiff brings claims of race discrimination under Title VII of the Civil Rights Act of 1964 and Ohio Revised Code 4112, *et seq*.

"Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e–2(a)(1)). Ohio courts analyze § 4112 claims using Title VII case law, and thus the claims are properly considered together. *See Ohio Civil Rights Comm'n v. Ingram*, 69 Ohio St.3d 89 (1994).

When a plaintiff does not put forth direct evidence of discrimination, this Court applies the burden-shifting analysis established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and later modified by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). This framework places the initial burden on Plaintiff to establish her prima facie case. *Burdine*, 450 U.S. at 252-53 (citing *McDonnell Douglas*, 411 U.S. at 802). To satisfy this

5

burden, the plaintiff must show "(1) [she] was a member of a protected class; (2) [she] suffered an adverse employment action; (3) [she] was qualified for the position; and (4) [she] was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006) (internal citations and quotations omitted). If the plaintiff can establish a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the action. *Burdine*, 450 U.S. at 252-53 (citing *McDonnell Douglas*, 411 U.S. at 802). If the defendant articulates such a reason, the burden shifts back to the plaintiff to demonstrate the proffered reason was a mere pretext for discrimination. *Id.* at 253.

In the instant case, the Complaint alleges Plaintiff is a member of a protected class, she was qualified for the job, she suffered adverse employment actions (a probationary period and termination), and that similarly situated individuals outside the protected class did not suffer such actions. These facts are deemed true by Defendant's default. Plaintiff has therefore established her entitlement to default judgment on her federal and state race discrimination claims.

*Disability Discrimination (Counts III and IV)*

Plaintiff also brings disability discrimination claims under the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.* (Count III), and Ohio Revised Code § 4112.01, *et seq.*(Count IV).

Discriminating against a qualified individual on the basis of a disability is prohibited under the ADA and Ohio state law. *See* 42 U.S.C. § 12112(a); Ohio Rev. Code § 4112.02(A). For her ADA claim, Plaintiff must prove: (1) she has a disability; (2) she is "otherwise qualified" to perform the job requirements, with or without reasonable accommodation; and (3) she was either denied a reasonable accommodation or suffered an adverse employment action solely

6

because of her disability. *Smith v. Ameritech*, 129 F.3d 857, 866 (6th Cir. 1997). As with race discrimination claims, the Sixth Circuit has explained that "Ohio's disability-discrimination statute and the ADA employ the same analysis." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 872 (6th Cir. 2007); *see also Columbus Civ. Serv. Comm'n v. McGlone*, 82 Ohio St. 3d 569, 697 (1998) (stating Ohio courts rely on federal interpretations of the ADA as persuasive authority in interpreting Ohio's disability discrimination law). Further, the Court applies the burden-shifting framework shifting framework set forth in *McDonnell Douglas* and *Burdine* for a claim of disability discrimination based on indirect evidence.

Again, the allegations of the Complaint – deemed admitted by Defendant's default – establish Plaintiff's entitlement to judgment. She (1) has disabilities; (2) she is "otherwise qualified" to perform the job requirements, with or without reasonable accommodation; and (3) she was both denied a reasonable accommodation and suffered adverse employment actions because of her disability. These facts are deemed true by Defendant's default. Plaintiff has established her entitlement to judgment on her disability discrimination claims.

*Retaliation (Counts V and VI)*

Finally, Plaintiff brings claims for retaliation in violation of 42 U.S.C. § 2000e-3 (Count V), and Ohio Revised Code § 4112.02(I) (Count VI).

Ohio Revised Code § 4112.02(I) prohibits "any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section . . . ." This language mirrors that of Title VII, which establishes civil penalties under federal law for any employer that "discriminate[s] against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter. . . ." 42 U.S.C. § 2000e–3(a). Because of these statutes' similar language and origin,

7

Ohio courts have held that "[f]ederal law provides the applicable analysis for reviewing retaliation claims" brought under Ohio Rev. Code § 4112.02(I). *Baker v. Buschman Co.*, 127 Ohio App. 3d 561, 568 (Ohio Ct. App. 1998) (internal quotation and citation omitted); *see also Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St. 2d 192, 196 (Ohio 1981) ("[F]ederal case law interpreting Title VII . . . is generally applicable to cases involving alleged violations of [Ohio Rev. Code] Chapter 4112.").

The *McDonnell Douglas / Burdine* burden shifting analysis applies to Title VII and Ohio retaliation claims. *See Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 661 (6th Cir. 2020). Establishing a *prima facie* case of retaliation requires the plaintiff to demonstrate: (1) plaintiff engaged in a protected activity; (2) defendant knew of that engagement in protected activity; (3) plaintiff suffered an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *Kirilenko-Ison*, 974 F.3d at 661 *Baker*, 713 N.E.2d at 491.

Again, the allegations in the Complaint, deemed true by Defendant's default, establish that Plaintiff reported race discrimination to Defendant, suffered adverse employment actions, and that others who did not engage in protected activity were treated differently. As such, Plaintiff is entitled to judgment on her retaliation claims.

Damages

Having determined Plaintiff is entitled to a default judgment on each of her claims, the Court turns to the question of damages. Plaintiff seeks: (1) $22,002.72 in compensatory damages; (2) $22,002.72 in emotional distress damages; and (3) $44,005.44 in punitive damages, for a total of $88,010.88. She further seeks attorneys' fees and costs in an amount of $5,287.00.

*Compensatory Damages*

Plaintiff seeks $22,002.72 in compensatory damages. She supports this with her Affidavit in which she avers she suffered (1) wage loss of $527.04 as a result of her wrongful suspension in April 2020; (2) wage loss of approximately $15,547.68 between June 1 and November 18, 2020 while she was unemployed following her termination; and (3) $5,928.00 in wage loss between November 19, 2020 and February 8, 2022 due to a pay differential between her employment with Defendant and her later employment. (Doc. 7-1, at ¶¶ 4, 7, 10).

The Court finds the evidence presented is sufficient to establish with "reasonable certainty" that Plaintiff is entitled to the amount requested. *See Vesligaj*, 331 F. App'x at 355. As such, Plaintiff will be awarded $22,002.72 in compensatory damages.

*Emotional Distress*

Plaintiff seeks $22,002.72 in emotional distress damages, a "1x" multiplier of her compensatory damages. Plaintiff argues that in cases such as this, "it is common for the jury to award emotional distress and punitive damages in multiplier amounts." (Doc. 7, at 5).

As noted above, "[w]here damages are unliquidated a default admits only defendant's liability and the amount of damages must be proved." *Antoine*, 66 F.3d at 110–11. Again, "[t]he district court must conduct [ ] an inquiry in order to ascertain the amount of damages with reasonable certainty." *Vesligaj*, 331 F. App'x at 355 (internal citation omitted). This can be done based on evidentiary submissions or a hearing, depending on the circumstances. *See id.* ("A district court's determination that a hearing is not necessary to determine the amount of damages under Rule 55(b)(2) is reviewed for abuse of discretion.").

Emotional distress damages are recoverable in Title VII cases. 42 U.S.C. § 1981a(b)(3); *Turic v. Holland Hospitality*, 85 F.3d 1211, 1215 (6th Cir. 1996) (plaintiff must show the

9

defendant's unlawful discrimination caused her emotional distress, which can be established with "[a] plaintiff's own testimony, along with the circumstances of a particular case.").

In evidentiary support of her request for emotional distress damages, Plaintiff avers she suffers from "increased anxiety, loss of sleep, restlessness, extreme stress, and lack of trust for future employers" as a result of Defendant's conduct. (Doc. 7-1, at ¶¶ 12-13). The Court finds the amount requested reasonable in light of the facts of this case, and that Plaintiff has established her entitlement to $22,002.72 in emotional distress damages.

*Punitive Damages*

Plaintiff further requests $45,005.44 in punitive damages, a "2x" multiplier of her compensatory damages. "Ordinarily, the Court may award punitive damages as part of a default judgment." *Scrivo v. Kendrick-Hall*, 2020 WL 6335991, at *4 (E.D. Mich.) (citing *Davis v. Brown*, 23 F. App'x 504, 506 (6th Cir. 2001); *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990)).

"Punitive damages are available in a Title VII claim where the plaintiff can demonstrate by a preponderance of the evidence that the employer 'engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *Tisdale v. Fed. Exp. Corp.*, 415 F.3d 516, 531 (6th Cir. 2005) (quoting 42 U.S.C. § 1981a(b)(1)). Further, "It is well-settled that [Ohio Rev. Code §] 4112.99 permits an award of punitive damages in a discrimination claim" brought under Ohio Rev. Code Chapter 4112. *Waddell v. Roxane Labs., Inc.*, 2004 WL 1103710, at *13 (Ohio Ct. App.). To receive punitive damages, Ohio law requires a Plaintiff to prove by clear and convincing evidence, *see* Ohio Rev. Code § 2315.21(D)(4), that the defendant possessed "actual malice." *Preston v. Murty*, 32 Ohio St. 3d 334 (Ohio 1987). "[A]ctual malice . . . is (1) that state of mind under which a person's

10

conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Id.* at 336. "The first prong of actual malice has also been defined as conduct characterized by retaliation, or a determination to vent . . . feelings upon other persons." *Meyers v. Hot Bagels Factory, Inc.*, 721 N.E.2d 1068, 1078 (Ohio Ct. App. 1999) (internal citation and quotation omitted). Actual malice may be inferred from conduct and surrounding circumstances that may be characterized as "reckless, wanton, willful, or gross." *Id.* (citing *Calmes v. Goodyear Tire & Rubber Co.*, 575 N.E.2d 416, 419 (Ohio 1991) (quoting *Preston*, 32 Ohio St. 3d 334, at Syllabus)).

Plaintiff argues that (1) because she has been granted default judgment on her retaliation claim, she has demonstrated her entitlement to punitive damages, and (2) Defendant's actions in firing her for failure to volunteer to work in a COVID-19 unit, knowing her "high risk" status demonstrates a conscious disregard for her safety. The Court finds Plaintiff has sufficiently established her entitlement to punitive damages given the circumstances of this case and that she is entitled to the amount requested, $44,005.44.

<u>Attorneys' Fees</u>

Plaintiff further asks the Court to award her attorneys' fees and costs. She submits counsel's timesheet (Doc. 7-3), counsel's affidavit (Doc. 7-2), and a 2019 OSBA report (Doc. 7-4). Plaintiff seeks $5,287.09 in attorneys' fees and litigation costs. This consists of 13 hours and 14 minutes of attorney time at $325 and $350 per hour ($4,507.09), plus $780 in costs.

Under Title VII, a court may award a prevailing party a "reasonable attorney's fee." 42 U.S.C. § 2000e-5(k). Reasonable attorney's fees are calculated using the "lodestar" method,

which is determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).[1]

"To justify any award of attorneys' fees, the party seeking compensation bears the burden of documenting its work." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 617 (6th Cir. 2007). In Ohio, although § 4112.99 does not specifically authorize attorney's fees, a plaintiff may recover attorney's fees if she is awarded punitive damages. *Sutherland v. Nationwide Gen. Ins. Co.*, 102 Ohio App. 3d 297, 300 (1995); *see also Hutchinson v. J.C. Penney Cas. Ins. Co.*, 17 Ohio St. 3d 195, 200 (1985) ("If punitive damages are proper, the aggrieved party may also recover reasonable attorney fees.").

Having reviewed Plaintiff's submissions, the Court finds both the requested fees to be reasonable and appropriate. As such, the Court grants Plaintiff's request for $5,287.09 in attorneys' fees and litigation costs.

## Conclusion

For the foregoing reasons, good cause appearing, it is

ORDERED that Plaintiff's Motion for Default Judgment and Award of Damages (Doc. 7) be, and the same hereby is, GRANTED; and Plaintiff is awarded $88,010.88 in compensatory, emotional distress, and punitive damages; and $5,287.09 in attorneys' fees and costs for a total of $93,297.97.

    s/ *James R. Knepp II*
    UNITED STATES DISTRICT JUDGE

---

1. While the lodestar is the presumptive figure, "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward." *Hensley*, 461 U.S. at 434. These factors include, for example, the results obtained by the prevailing party, the time and labor required, the difficulty of the legal issues, the risk taken on, and the quality of the work performed by counsel. *Geier v. Sundquist*, 372 F.3d 784, 792 (6th Cir. 2004).